UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY WELFARE FUND; and BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>BELAND & WIEGERS ENTERPRISES, INC., an Illinois corporation, DANIEL J. BELAND, an individual, and BERNARD WIEGERS, an individual,<br><br>Defendants. | Case No. 13 CV 1611<br><br>Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Welfare Fund and Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund filed an amended complaint against defendants Beland & Wiegers Enterprises, Inc. (B&W); Daniel J. Beland; and Bernard Wiegers, alleging breach of contract and withdrawal liability arising under the Employee Retirement Income Security Act (ERISA).

Now before the court is the plaintiffs' motion for summary judgment against B&W and Beland. On December 12, 2013, the court set a briefing schedule on the motion, with responses due January 15, 2014. On January 13, 2014, the court granted the defendants' motion for an

extension of time to February 14, 2014, to file its response.[1] Plaintiffs had no opposition to the extension and the court granted the motion. But over six months after the new deadline passed, the defendants have still filed no response. For the reasons detailed below, the motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND FACTS

Northern District of Illinois Local Rule 56.1(a) requires parties moving for summary judgment to submit a statement of material facts. Local Rule 56.1(b)(3)(C) provides: "All materials set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The plaintiffs filed a Local Rule 56.1 Statement of Material Facts (ECF No. 24), and the defendants have not disputed the facts in that statement. Accordingly, the court deems those facts admitted, and the facts that follow are taken primarily from the plaintiffs' statement. *See J&J Sports Prods., Inc. v. Perez*, No. 12 C 8256, 2014 WL 3805818, at *1 (N.D. Ill. Aug. 1, 2014). Nevertheless, the court "must still construe those facts in the light most favorable to the defendants as well as draw all reasonable inferences in their favor." *Id.* (citing *Keeton v. MorningStar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).

Defendant B&W entered into a collective-bargaining agreement (CBA) with the Automobile Mechanics' Local Union No. 701 on or about May 28, 2010. B&W agreed to be bound by the provisions of the Agreements and Declarations of Trust (Trust Agreements) which created the Automobile Mechanics' Local Union No. 701 and Industry Pension Fund and the Automobile Mechanics' Local No. 701 Union and Industry Welfare Fund (collectively, Funds).

---

[1] All three defendants moved collectively for an extension of time. (Mot., ECF No. 27.) The plaintiffs clarify that they "are only seeking summary judgment against B&W and Beland" and not Wiegers. (Pl.'s Reply ¶ 2, ECF No. 31.)

Pursuant to the CBA and the Trust Agreements, B&W was required to make monthly reports of the number of weeks worked by covered employees and pay contributions to the Funds for each week that a covered employee performs any work at the negotiated rate set forth in the CBA. The monthly reports and contributions during all times relevant were due on or before the 10th day of the calendar month following the calendar month during which the work was performed. Under the terms of the Trust Agreements, contributing employers that fail to submit payment of contributions by the due date are responsible for paying liquidated damages of 10% of any amount unpaid, plus any reasonable attorney's fees and costs of maintaining suit.

B&W failed to submit payment of contributions and surcharges to the Funds for the months of September and October 2012 in the amount of $5,020.50. As a result of unpaid contributions and surcharges, B&W incurred liquidated damages of $502.45.

On September 19 or 20, 2012, B&W ceased all covered work. On March 14, 2013, the Pension Fund's counsel sent a notice and demand for payment of withdrawal liability in the amount of $261,052 to B&W. The notice and demand for payment enclosed a payment schedule in accordance with 29 U.S.C. § 1399, pursuant to which B&W was required to make twenty-six quarterly payments in the amount of $12,104 each followed by a final payment in the amount of $8,996 to pay off its withdrawal liability. The first quarterly payment was due on April 1, 2013. After B&W failed to make its first quarterly payment on April 1, 2013, the Pension Fund sent B&W a notice to cure its default. B&W failed to submit payment of any of its quarterly installments.

Daniel Beland is the sole owner of B&W. At the time of B&W's withdrawal from the Pension Fund, Beland owned the property located at 11625 South Ridgeland, Alsip, Illinois. Before cessation of covered operations, B&W operated out of that property. Neither B&W nor

Beland requested a review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(c)(2) or initiated arbitration to challenge the plaintiffs' withdrawal liability assessment pursuant to 29 U.S.C. § 1401.

Pursuant to the Pension Benefit Guaranty Corporation's website, the interest rate for overdue or defaulted withdrawal liability has been 3.25% since January 1, 2012. Interest on the unpaid withdrawal liability in the amount of $261,052 from April 1, 2013 through November 30, 2013 at a rate of 3.25% equals $5,709.93. The Pension Fund Trust Agreement provides that withdrawal liability payments "not received before the expiration of said period shall be assessed liquidated damages of at least ten percent (10%) of the monies due per month." (Agm't & Decl. of Trust 9-10, ECF No. 24-3.) Liquidated damages at 10% of $261,052 would be $26,105.20.

The Pension Fund Trust Agreement also states: "Employers shall be liable to the Trustees for all costs, expenses and attorney's fees . . . incurred by them in enforcing any obligation of Employers created by this Trust Agreement or any bargaining agreement, including, without limitation, the duty to furnish records to the Trustees to determine the Employer's compliance with said obligations." (*Id.* at 14-15.) As of November 27, 2013, the Plaintiffs have expended $8,043.51 in attorney's fees and costs.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate

when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

"[T]he only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine facts warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts." *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). Thus, even if the non-moving party fails to file a brief in opposition to a summary-judgment motion, the court must still determine whether the moving party is entitled to judgment as a matter of law.

### III. ANALYSIS

The plaintiffs ask the court to grant their motion for summary judgment and award damages as follows: (1) against B&W for $5,522.92 consisting of $5,020.50 for unpaid contributions and surcharges and $502.45 for liquidated damages[2]; and (2) against B&W and Beland jointly and severally for $300,910.64, consisting of $261,052 for withdrawal liability, $26,105.20 for liquidated damages, $5,709.93 for statutory interest at a 3.25% rate, and $8,043.51 for attorney's fees and costs.

**A.    Count 1 (Breach of Contract)**

The first amended complaint alleges:

> Pursuant to the provisions of the Collective Bargaining Agreement and the Trust Agreements, the Defendant B&W ENTERPRISES is required to make monthly reports of the number of weeks worked by Covered Employees and pay contributions to the TRUST FUNDS for each week that a Covered Employee performs any work at the negotiated rate set forth in the Collective Bargaining Agreement. The monthly reports and contributions during all relevant times were due on or before the 10th day

---

[2]     $5,020.50 + $502.45 is $5,522.95, not $5,522.92. Plaintiffs do not explain this arithmetic discrepancy. As discussed below in footnote 3, this discrepancy is ultimately irrelevant.

of the calendar month following the calendar month during which the work was performed.

(Am. Compl. ¶ 17, ECF No. 15.) In their answer, the defendants admit that this allegation is true. (Answer to Am. Compl. ¶ 17, ECF No. 19.) The collective-bargaining agreement has a term of July 1, 2010 to June 30, 2013. (CBA 17, ECF No. 15-1.) The undisputed facts show that B&W failed to submit payment of contributions and surcharges in September and October 2012 totaling $5,020.50. Accordingly, B&W breached the terms of the CBA and the Trust Agreements.

The parties agree that under Section 502(g)(2) of ERISA, the CBA, and the Trust Agreements, "employers who fail to submit their monthly reports and contributions to the TRUST FUNDS on a timely basis are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus any reasonable attorney's fees and costs of maintaining suit." (Am. Compl. ¶ 18, ECF No. 15; *see* Answer to Am. Compl. ¶ 18, ECF No. 19.) Ten percent of $5,020.50 is $502.05.[3]

Because there is no genuine dispute as to a material fact and the Plaintiffs have shown a breach of contract as a matter of law, the court concludes that the Plaintiffs are entitled to summary judgment on Count 1 of their complaint. The court awards Plaintiffs $5,020.50 for unpaid contributions and surcharges, and $502.05 for liquidated damages, which totals $5,522.55, plus reasonable attorney's fees and costs.

---

[3] The plaintiffs' statement of material facts states that "B&W incurred liquidated damages in the amount of $502.45." (Pls.' Stmt. of Mat. Facts ¶ 7, ECF No. 24). The forty-cent discrepancy between $502.45 and $502.05 appears to come from a rounding error. (*See* Am. Compl. ¶ 19, ECF No. 15) (calculating liquidated damages of 10% on $2,106 as $211 rather than $210.60). The plaintiffs have established they are entitled to 10% of the amount unpaid, thus the court will award $502.05 in liquidated damages rather than the $502.45 that the complaint and motion for summary judgment seek.

**B. Count 2 (Withdrawal Liability)**

    1.    <u>B&W's Liability</u>

The parties agree that B&W terminated its operations and stopped making contributions to the Pension Fund on behalf of its employees in October 2012. The parties also agree that this constitutes a complete withdrawal from the Pension Fund under the meaning of 29 U.S.C. § 1383. The amended complaint alleges that B&W incurred withdrawal liability of $261,052 arising from its withdrawal from the Pension Fund.

Before a plan sponsor may assess withdrawal liability based on an employer's complete withdrawal, the plan sponsor must (1) notify the employer of the amount of the liability; (2) notify the employer of the schedule for liability payments; and (3) demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). The undisputed facts demonstrate that the Pension Fund complied with these steps. On March 14, 2013, the Pension Fund sent a notice and demand for payment of withdrawal liability in the amount of $261,052 to B&W and enclosed a payment schedule requiring twenty-six quarterly payments, with the first payment due on April 1, 2013. B&W did not make a payment on April 1, 2013.

"In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made . . . if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure . . . ." 29 U.S.C. § 1399(c)(5). On April 2, 2013, the Pension Fund sent B&W a notice of default as required by 29 U.S.C. § 1399(c)(5). The Pension Fund filed its first amended complaint on June 3, 2013, more than sixty days after it sent B&W the notice of default.

Under 29 U.S.C. § 1399(b)(2)(A)(i), withdrawing employees may request a review of "any specific matter relating to the determination of the employer's liability and the schedule of payments" within 90 days of receiving its notice of withdrawal liability pursuant to 29 U.S.C. § 1399(b)(1). If the employer disputes the withdrawal-liability assessment after it requests a review, it must initiate arbitration to dispute the assessment. *See* 29 U.S.C. § 1401(a)(1). B&W did not request a review of the Pension Fund's withdrawal-liability assessment, nor did it initiate arbitration to dispute the assessment.

"If no arbitration proceeding has been initiated pursuant to [29 U.S.C. § 1401(a)(1)], the amounts demanded by the plan sponsor under [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1); *see Cent. States, Se. & Sw. Areas Pension Fund v. Allega Concrete Corp.*, No. 13 C 6896, -- F. Supp. 2d --, 2014 WL 99075, at *1 (N.D. Ill. Jan. 9, 2014).

B&W did not initiate an arbitration proceeding to dispute the Pension Fund's withdrawal-liability assessment. Therefore, as a matter of law, B&W is liable for the withdrawal-liability assessment of $261,052. Additionally, the Pension Fund is entitled to 3.25% interest as a matter of law pursuant to 29 U.S.C. § 1399(c)(3) and 29 C.F.R. § 4219.32. That interest amount totals $5,709.93. The Pension Fund is also entitled to liquidated damages of 10% pursuant to 29 U.S.C. § 1451(c) and the Pension Fund Trust Agreement. Ten percent of $261,052 is $26,105.20.

The Pension Fund is also entitled to reasonable attorney's fees and costs as a matter of law pursuant to the Pension Fund Trust Agreement. The undisputed facts show that the plaintiffs

have expended $8,043.51 in attorney's fees and costs, and the court finds this amount to be reasonable.

Because there is no genuine dispute as to a material fact and the Pension Fund has shown withdrawal liability as a matter of law, the court concludes that the Pension Fund is entitled to summary judgment against B&W on Count 2 of its complaint.

2. Beland's Liability

The Pension Fund asks this court to hold B&W and Beland jointly and severally liable for withdrawal liability and its associated liquidated damages, interest, and attorney's fees. The court must determine "whether withdrawal liability may properly be imputed to [Beland] under [29 U.S.C.] § 1301(b)(1)." *Cent. States*, *Se. & Sw. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir. 1992).

Under 29 U.S.C. § 1301(b)(1), "all employees of trades or business which are under common control shall be treated as employed by a single employer and all such trades and business as a single employer" for purposes of withdrawal liability. Thus, for the court to hold Beland liable for B&W's withdrawal liability, the Pension Fund must establish that: (1) Beland and B&W are each a "trade or business," and (2) Beland and B&W are under common control. *See Personnel*, 974 F.2d at 792.

Although § 1301(b)(1) does not define "trade or business," the Seventh Circuit adopted the test from *Commissioner v. Groetzinger*, 480 U.S. 23 (1987) "to determine whether an enterprise constitutes a trade or business. Under *Groetzinger*, the court must consider whether the organization engaged in an activity (1) with continuity and regularity and (2) for the primary purpose of income or profit." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 877 (7th Cir. 2011) (citing *Groetzinger*, 480 U.S. at 35).

The amended complaint alleges that B&W is an Illinois corporation, and the defendants admit this allegation. As a corporation, B&W is clearly a "trade or business" for purposes of § 1301(b)(1). *See Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001) ("Section 1301(b)(1) presents no interpretive difficulties when it is used to impute withdrawal liability to another corporation . . . .").

Whether Beland is a "trade or business" presents a trickier question. The Pension Fund notes that the undisputed facts show that Beland owned the property out of which B&W operated when B&W withdrew from the pension. In *Central States, Southeast & Southwest Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, the Seventh Circuit stated: "[W]e have held that leasing property to a withdrawing employer itself is categorically a 'trade or business.'" *SCOFBP*, 668 F.3d at 879. But ownership of a property does not necessarily rise to the level of a "trade or business." In *Fulkerson*, the Seventh Circuit held that individually-owned property "can be considered a personal investment . . . although a more substantial investment of time may be considered regular and continuous enough to rise to the level of a 'trade or business.'" *Id.* (construing *Fulkerson*, 238 F.3d at 896). The Seventh Circuit has also held that renting apartments above a residential garage is not a trade or business "even when the owner realized income, where the owner's primary purpose for renting the apartments was the added security from the tenant's presence." *Id.* (construing *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 643 (7th Cir. 2001)).

Here, B&W has not alleged facts showing that Beland leased his property to B&W "with continuity and regularity." *SCOFBP*, 668 F.3d at 877. The undisputed facts do not indicate how long Beland leased out his property or whether the lease was continuous. The facts do not show that Beland leased his property "for the purpose of income and profit." *Id.* In fact, the facts do

not show that Beland generated revenue from B&W's operations out of the property or that Beland and B&W had a lease agreement.

The undisputed facts are insufficient to show that Beland's ownership of the property satisfies the *Groetzinger* test for a "trade or business," much as the individually-owned property in *Fulkerson* and the above-garage apartments in *White* did not. Because the court cannot determine that Beland is a "trade or business" as a matter of law, the court cannot hold him jointly and severally liable for B&W's withdrawal liability. Thus, the court denies B&W's motion or Count 2 as to Beland.

## IV. CONCLUSION

For the reasons stated above, the court grants the plaintiffs' motion for summary judgment as to B&W but denies the motion as to Beland. The plaintiff is entitled to judgment against B&W as follows:

- $5,522.55 to the plaintiffs for the breach-of-contract claim, consisting of $5,020.50 in contributions and surcharge and $502.05 in liquidated damages;

- $292,867.13 to the Pension Fund for the withdrawal-liability claim, consisting of $261,052 for withdrawal liability, $26,105.20 for liquidated damages, and $5,709.93 in interest; and

- $8,043.51 to the plaintiffs for attorney's fees and costs.

The court will defer entry of judgment against B&W until the plaintiffs inform the court how they wish to proceed against the individual defendants.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 21, 2014